UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(NORTHERN DIVISION)

YAGOUB M. MOHAMED, *individually and
on behalf of all others similarly situated,*

    Plaintiff,

    v.

BANK OF AMERICA, N.A.,

    Defendant.

Civil Action No. 1:21-cv-01283-CCB

**MEMORANDUM IN SUPPORT OF
<u>BANK OF AMERICA, N.A.'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 2

    I.      THE DUI BENEFITS PROGRAM ................................................... 2

    II.     PLAINTIFF'S ALLEGATIONS .................................................... 3

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ............................................................................................................. 5

    I.      PLAINTIFF DOES NOT ALLEGE A PLAUSIBLE CLAIM THAT HIS ACCOUNT IS COVERED BY EFTA/REG E (COUNT ONE) ........................... 5

    II.     PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FAILS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM (COUNT FOUR) ................................................... 7

    III.    PLAINTIFF IS NOT A "THIRD-PARTY BENEFICIARY" UNDER THE DUI AGREEMENT, AND THEREFORE CANNOT SUE FOR ALLEGED BREACH OF THAT CONTRACT (COUNT FIVE) ..................... 10

    IV.    PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED (COUNT SIX) ................................................... 13

    V.     PLAINTIFF HAS NOT STATED A DIRECT CLAIM UNDER THE MCPA (COUNT THREE) ................................................... 16

           A.    Plaintiff Has Not Pled His Misrepresentation Claims with Particularity. ................................................... 16

           B.    Plaintiff Cannot State an MCPA Claim Based on Alleged Breaches of Contract. ................................................... 20

           C.    Plaintiff Cannot Maintain an MCPA Claim Based On MPIPA Where He Has Not Alleged an MPIPA Violation. ................................................... 20

    VI.    PLAINTIFF HAS NOT STATED A CLAIM UNDER THE MARYLAND PERSONAL INFORMATION PROTECTION ACT (COUNT TWO) ............. 21

           A.    Plaintiff Has Not Alleged That BANA's Use of Magnetic Stripe Technology Is an Unreasonable Security Procedure or Practice. ........... 21

           B.    Plaintiff Has Not Alleged That BANA Collected, Stored, or Transmitted Plaintiff's Personal Information in an Unsafe Manner. ....... 22

           C.    Plaintiff Has Not Alleged That He Suffered Any Injury as a Result of BANA's Conduct. ................................................... 23

CONCLUSION ........................................................................................................ 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agomuoh v. PNC Fin. Servs. Grp.*,
   No. GJH-16-1939, 2017 WL 657428 (D. Md. Feb. 16, 2017) .........................................16, 18

*Amrhein v. Regency Mgmt. Servs., LLC*,
   No. SKG-13-1114, 2014 WL 1155356 (D. Md. Mar. 20, 2014) ..............................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................................4, 7

*Bourgeois v. Live Nation Ent., Inc.*,
   3 F. Supp. 3d 423 (D. Md. 2014) ........................................................................................17

*Brault v. Trans Union, LLC*,
   No. GJH-18-3244, 2019 WL 2162284 (D. Md. May 17, 2019) .......................................17, 18

*California v. San Pablo & Tulare R. Co.*,
   149 U.S. 308 (1893) ..........................................................................................................8, 9

*California v. Texas*,
   141 S. Ct. 2104 (2021) .........................................................................................................25

*Clapper v. Amnesty Int'l*,
   568 U.S. 398 (2013) .............................................................................................................26

*Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*,
   358 Md. 83, 747 A.2d 600 (2000) .......................................................................................14

*Currie v. Wells Fargo Bank, N.A.*,
   950 F. Supp. 2d 788 (D. Md. 2013) .....................................................................................18

*Dainty v. Wells Fargo Bank, N.A.*,
   No. CV TDC-16-2755, 2017 WL 750478 (D. Md. Feb. 24, 2017) .......................................13

*Diamond v. U.S. Bank, N.A.*,
   No. CV TDC-19-1458, 2020 WL 2319112 (D. Md. May 11, 2020) .......................................8

*Doe v. Virginia Dept. of State Police*,
   713 F. 3d 745 (4th Cir. 2013) ..............................................................................................22

*FLF, Inc. v. World Publications, Inc.*,
  999 F. Supp. 640 (D. Md. 1998) ..................................................................14

*Flowers v. Baltax 2017, LLC*,
  Civil No. JKB-19-0618, 2019 WL 3501584 (D. Md. Aug. 1, 2019).................................22, 23

*Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*,
  944 A.2d 1055 (D.C. 2008) ..................................................................10, 11

*Friedman's, Inc. v. Dunlap*,
  290 F.3d 191 (4th Cir. 2002) ..................................................................8

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) ..................................................................8

*Gibson v. Nationstar Mortg., LLC*,
  No. GJH-14-03913, 2015 WL 302889 (D. Md. Jan. 21, 2015) ..................................................................18

*Goonewardene v. ADP, LLC*,
  434 P.3d 124 (Cal. 2019) ..................................................................12

*Goss v. Bank of Am., N.A.*,
  917 F. Supp. 2d 445 (D. Md.) ..................................................................14, 15

*Green v. Wells Fargo Bank, N.A.*,
  927 F. Supp. 2d 244 (D. Md. 2013) ..................................................................19

*Haley v. Corcoran*,
  659 F. Supp. 2d 714 (D. Md. 2009) ..................................................................17

*Harman v. Unisys Corp.*,
  356 F. App'x 638 (4th Cir. 2009) ..................................................................22

*Jackson v. Marion Cnty.*,
  66 F.3d 151 (7th Cir. 1995) ..................................................................7

*Javitt v. Cunningham Contracting, Inc.*,
  2016 WL 4493367 (Md. Ct. Spec. App. Aug. 26, 2016) ..................................................................20

*Kaswell v. Wells Fargo Bank, N.A.*,
  No. CIV.A. RDB-13-2315, 2014 WL 3889183 (D. Md. Aug. 6, 2014) ..................................................................19, 20

*Knox v. Service Emps. Int'l Union, Local 1000*,
  567 U.S. 298 (2012) ..................................................................8

*Legore v. OneWest Bank, FSB*,
  898 F. Supp. 2d 912 (D. Md. 2012) ..................................................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................4, 25

*Mann Bracken, LLP v. Exec. Risk Indem., Inc.*,
   No. DKC 15-1406, 2015 WL 5721632 (D. Md. Sept. 28, 2015) ...........................22

*Marchese v. JPMorgan Chase Bank, N.A.*,
   917 F. Supp. 2d 452 (D. Md. 2013) ......................................................................17

*MIM Constr., Inc. v. Frederick Cty.*,
   No. DKC 19-1106, 2020 WL 998739 (D. Md. Mar. 2, 2020)..........................23, 24

*Mogavero v. Silverstein*,
   142 Md. App. 259, 790 A.2d 43 (2002)................................................................15

*Neto v. Rushmore Loan Mgmt. Servs., Inc.*,
   No. CV DKC 16-1056, 2017 WL 896890 (D. Md. Mar. 7, 2017) .........................20

*Polek v. J.P. Morgan Chase Bank, N.A.*,
   424 Md. 333, 36 A.3d 399 (2012) ...........................................................................9

*Robinson v. Lioi*,
   No. CV CCB-12-192, 2017 WL 2937568 (D. Md. June 30, 2017)..................15, 16

*Settlers Crossing, LLC v. U.S. Home Corp.*,
   No. DKC 08-0267, 2009 WL 10685580 (D. Md. Mar. 19, 2009)............................4

*Solomon v. Cap. One Bank USA*,
   No. GJH-14-03638, 2014 WL 7336694 (D. Md. Dec. 19, 2014)..........................18

*Spokeo, Inc. v. Robins*,
   578 U.S. 856, 136 S. Ct. 1540 (2016).....................................................................25

*Thompson v. Countrywide Home Loans Servicing, L.P.*,
   No. L-09-2549, 2010 WL 1741398 (D. Md. Apr. 27, 2010)............................20, 25

*Turner v. JPMorgan Chase, N.A.*,
   No. CIV.A. TDC-14-0576, 2015 WL 5021390 (D. Md. Aug. 21, 2015)...............19

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980).................................................................................................4

*Van Leer v. Deutsche Bank Securities, Inc.*,
   479 Fed. App'x. 475 (4th Cir. 2012) ....................................................................13

*Velasco v. Gov't of Indonesia*,
   370 F.3d 392 (4th Cir. 2004) ...................................................................................8

*Verbal v. Giant of Maryland, LLC*,
204 F. Supp. 3d 837 (D. Md. 2016) ........................................................5, 22

*Williams v. United States*,
50 F.3d 299 (4th Cir. 1995) ................................................................................8

*Willis v. Countrywide Home Loans Servicing, L.P.*,
No. CIVA CCB-09-1455, 2009 WL 5206475 (D. Md. Dec. 23, 2009) ............19, 25

*Wm. T. Burnett Holding LLC v. Berg Bros. Co.*,
235 Md. App. 204, 175 A.3d 876 (2017)........................................................10

*Yaffe v. Scarlet Place Residential Condominium, Inc.*,
205 Md. App. 429, 45 A.3d 844 (2012)..........................................................10

*Yousef v. Trustbank Sav., F.S.B.*,
81 Md. App. 527, 568 A.2d 1134 (1990)........................................................13

**Statutes**

15 U.S.C. § 1693 ........................................................................................ *passim*

15 U.S.C. § 9021(a)(3).....................................................................................6, 7

15 U.S.C. § 9021(h)..............................................................................................7

31 U.S.C. § 5311..................................................................................................3

42 U.S.C. § 5177...............................................................................................6, 7

42 U.S.C. § 5121..................................................................................................6

Md. Code Ann., Labor and Employment, § 8-201(a)..........................................6

Md. Code Ann., Com. Law § 13-301(2)............................................................16

Md. Code Ann., Com. Law § 13-408(a).......................................................20, 23

Md. Code Ann., Com. Law § 14-3503(a)..........................................................21

Md. Code Ann., Com. Law § 14-3508 .........................................................16, 23

**Regulations**

12 C.F.R. § 1005.2(b)(3)(i)..................................................................................6

12 C.F.R. § 1005.15(a)(2)....................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................4, 8, 9, 26

Fed. R. Civ. P. 12(b)(6).................................................................................4

**Other Authorities**

*Letter from Pres. Donald J. Trump on Emergency Determination Under the
    Stafford Act* (Mar. 13, 2020), https://trumpwhitehouse.archives.gov/briefings-
    statements/letter-president-donald-j-trump-emergency-determination-stafford-
    act/...............................................................................................................7

*Maryland Department of Labor Provides Updates on Fraud Investigation* (Sept.
    17, 2020), https://www.dllr.state.md.us/whatsnews/uifraudupdate.shtml ...............................3

Maryland Dep't of Labor, *Frequently Asked Questions: Coronavirus Aid, Relief,
    and Economic Security Act (CARES Act) UI Benefit Provisions*,
    https://dhcd.maryland.gov/Communities/Documents/COVID-
    19/C.A.R.E.S.ActBenefitProvisionFAQs.pdf (last visited Aug. 2, 2021). ................................6

*Request for Proposals: Electronic Payment Card Services for Department of
    Labor, Licensing and Regulation, Division of Unemployment Insurance, RFP
    #DLLR-EPC-01172013* (Jan. 17, 2013),
    https://www.treasurer.state.md.us/media/52202/dllr_epc_01172013_rfp.pdf); ......................2

*UI Benefit Provisions*,
    https://dhcd.maryland.gov/Communities/Documents/COVID-
    19/C.A.R.E.S.ActBenefitProvisionFAQs.pdf (last visited Aug. 2, 2021) ................................6

This case arises out of allegedly fraudulent transactions that resulted from the theft of Plaintiff's prepaid debit card after it was mailed to him.  The prepaid debit card, issued by Bank of America, N.A. ("BANA" or the "Bank"), was the means by which the Maryland Department of Labor's Division of Unemployment Insurance ("DUI") distributed federal unemployment benefits to Plaintiff.  Plaintiff alleges that he did not receive the DUI debit card that was mailed to him, and that he subsequently discovered that it had been used by someone else over a period of approximately six weeks.  He alleges that he reported this theft to BANA but BANA did not reimburse him, and that BANA froze his card due to a suspicion of "irregular, unauthorized, or unlawful activities" and then unfroze his account after he verified his identity with DUI.

Based on these allegations, Plaintiff asserts a wide range of claims.  He accuses BANA of using inadequate technology on the debit cards and speculates that BANA failed to store his personal information in a reasonably secure manner, such that it enabled unauthorized third parties to access his account.  He alleges that BANA made false or misleading representations to him, although he does not allege that he made any decisions or choices in reliance on any such statements (or that he even saw any of the statements to which he cites), and he makes no attempt to connect BANA's statements to the losses he claims to have suffered as a result of the theft of his DUI debit card from the mail.  He claims that BANA breached his Account Agreement by freezing his account, but that agreement expressly permits BANA to freeze accounts.  He also claims BANA acted negligently by breaching duties that are nowhere in the Account Agreement but which Plaintiff claims are based in another, separate, "implied-in-fact" agreement.  Plaintiff also asserts that BANA breached its agreement with DUI, even though Plaintiff is not a party to that agreement.

1

Ultimately, Plaintiff's grievance is that BANA should have reimbursed him for transactions made by the individual(s) who stole his card.  But Plaintiff has now been reimbursed, which moots his claim for breach of the Account Agreement and deprives him of standing to pursue that claim, as damages for that alleged breach are limited to the amount of the allegedly unauthorized transactions.  Plaintiff also cannot pursue a claim for those unauthorized transactions under the Electronic Funds Transfer Act ("EFTA") or its implementing regulation, Regulation E ("Reg E"), as EFTA and Reg E do not apply to accounts like Plaintiff's which are funded only with federal disaster relief payments.

For the reasons set forth below, Plaintiff's complaint must be dismissed, with prejudice.

## **BACKGROUND**

### I.     **THE DUI BENEFITS PROGRAM**

DUI retained BANA to deliver benefits to Maryland residents pursuant to an agreement between DUI and BANA (the "DUI Agreement").  *See* Compl. ¶ 14 (citing *Request for Proposals: Electronic Payment Card Services for Department of Labor, Licensing and Regulation, Division of Unemployment Insurance, RFP #DLLR-EPC-01172013* ("RFP") (Jan. 17, 2013), https://www.treasurer.state.md.us/media/52202/dllr_epc_01172013_rfp.pdf); *id.* ¶¶ 20-32.  Under the DUI Agreement, BANA issues prepaid debit cards ("DUI Debit Cards") to recipients approved and identified by DUI (each, a "Cardholder").[1]  DUI distributes benefits to Cardholders by funding the DUI Debit Cards issued by BANA.  Compl. ¶ 14 (RFP, § 3.02); *see also* Compl. Ex. 2, ECF No. 1-4, Maryland Unemployment Benefits Debit Card Account Agreement (the "Account Agreement"), § 2.  The DUI Agreement was effective from approximately March 2013 through February 2021.  Compl. ¶ 32.

---

[1] *See* Compl. ¶ 14 (RFP, § 3.06(A)(4)-(5)).

2

An Account Agreement between BANA and each Cardholder governs such Cardholder's contractual relationship with BANA.  Compl. ¶ 35.  The Account Agreement expressly permits BANA to take the initiative to prevent fraud.  Among other terms, the Account Agreement states that BANA may "freeze" accounts if it "suspect[s] irregular, unauthorized, or unlawful activities may be involved" (Compl. Ex. 2, Account Agreement, § 2); may restrict access to any prepaid debit card if BANA notices suspicious activity (*id.* § 3); and may deduct from an account funds that a Cardholder is not entitled to keep (*id.* § 2).  These rights are consistent with BANA's numerous obligations under federal law, including under the Bank Secrecy Act (31 U.S.C. § 5311 *et seq.*), to monitor and report fraudulent and suspicious activity, and to prevent BANA from being used as an instrument of fraud or illegal acts such as money laundering.

## II.    PLAINTIFF'S ALLEGATIONS

Since the beginning of the COVID-19 pandemic, many Maryland residents have sought unemployment benefits, including those not traditionally eligible (*e.g.*, independent contractors and those who are self-employed) but who now qualify for Pandemic Unemployment Assistance ("PUA") under the federal CARES Act.[2]  Plaintiff alleges that he owned and operated an automotive mechanic services business which closed as a result of the pandemic, leading him to apply for unemployment insurance benefits.  Compl. ¶¶ 66-68.  Plaintiff alleges that he was awarded benefits in July 2020, but he did not receive his card for several months.  *Id.* ¶¶ 68, 76. He called BANA at the end of November 2020 and learned that the card had already been mailed to his home address, at which point he asked for another card, which he received on December 5, 2020.  *Id.* ¶¶ 75-76.  Plaintiff alleges that, after receiving his card, he learned that $14,644.00 in

---

[2] *See, e.g.*, Maryland Dep't of Labor, *Maryland Department of Labor Provides Updates on Fraud Investigation* (Sept. 17, 2020), https://www.dllr.state.md.us/whatsnews/uifraudupdate.shtml.

funds had been used between August 20, 2020 and October 1, 2020.  *Id.* ¶¶ 81, 85.  Plaintiff

reported those unauthorized transactions to BANA in early December 2020.  *Id.* ¶¶ 82-88.  Plaintiff

alleges that his account was frozen, that he subsequently completed an identification verification

requirement with DUI in January 2021, and that he was able to access his account again in early

February 2021.  *Id.* ¶¶ 101, 104, 106.  Plaintiff was reimbursed for the allegedly fraudulent

transactions in June 2021, after filing this Complaint.  *See* Declaration of Shane Daniels ("Daniels

Decl."), ¶ 5, Ex. 1.

## LEGAL STANDARD

A complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

if there is no "live" controversy or the plaintiff has not suffered an injury in fact and therefore has

no standing.  *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980); *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560 (1992).  In ruling on a Rule 12(b)(1) motion based on mootness or

standing, this Court may "rely[] on affidavits or any other evidence properly before the court."

*Settlers Crossing, LLC v. U.S. Home Corp.*, No. DKC 08-0267, 2009 WL 10685580, at *3 (D. Md.

Mar. 19, 2009), *aff'd sub nom. Settlers Crossing, L.L.C. v. U.S. Home Corp.*, 383 F. App'x 286

(4th Cir. 2010).

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim

to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Id.* at 555.  "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  To defeat a motion to dismiss

for failure to state a claim, "[l]egal conclusions couched as factual allegations are insufficient, as

4

are conclusory factual allegations devoid of any reference to actual events." *See Verbal v. Giant of Maryland, LLC*, 204 F. Supp. 3d 837, 844 (D. Md. 2016) (internal citations omitted).

## ARGUMENT

### I.     PLAINTIFF DOES NOT ALLEGE A PLAUSIBLE CLAIM THAT HIS ACCOUNT IS COVERED BY EFTA/REG E (COUNT ONE)

Plaintiff's first cause of action is for an alleged violation of EFTA and Reg E. Plaintiff's factual allegations, however, do not plausibly establish that his prepaid debit card account is even covered by EFTA and Reg E.[3] Plaintiff's conclusory allegation that his "debit card account . . . is an 'account' as defined by the [*sic*] 15 U.S.C. § 1693a(2) of the EFTA," Compl. ¶ 142, does not support his claim because EFTA and Reg E's definition of a covered "account" *excludes* various types of prepaid card accounts, including those established by a bank and loaded with government disaster funds. Without more, the regulatory exclusion bars his claim.

Reg E states a complex definition of a covered "prepaid account."[4] The definition also contains exclusions, including one for any "account that is directly or indirectly established

---

[3] To be clear, BANA's processes are designed to comply with EFTA and Reg E requirements for all DUI Debit Card accounts regardless of whether they are excluded from EFTA and Reg E coverage.

[4] In relevant part, the regulation defines the following as a "prepaid account":

**(C)** An account that is marketed or labeled as "prepaid" and that is redeemable upon presentation at multiple, unaffiliated merchants for goods or services or usable at automated teller machines; or

**(D)** An account:

**(1)** That is issued on a prepaid basis in a specified amount or not issued on a prepaid basis but capable of being loaded with funds thereafter,

**(2)** Whose primary function is to conduct transactions with multiple, unaffiliated merchants for goods or services, or at automated teller machines, or to conduct person-to-person transfers, and

**(3)** That is not a checking account, share draft account, or negotiable order of withdrawal account.

through a third party and loaded only with qualified disaster relief payments."   12 C.F.R.
§ 1005.2(b)(3)(ii)(B).   The Complaint's allegations confirm that Plaintiff's is not a covered
"account" because it is within the exclusion, as Plaintiff received money on an "account . . .
established through a third party" that was loaded with "qualified disaster relief payments."   As to
the first exclusion element, the Complaint alleges (as it must) that the debit card account was
established by BANA.  Compl. ¶ 29.

As to the second exclusion element, Plaintiff's allegations demonstrate that he received
federal PUA benefits, rather than traditional state unemployment benefits.   That is because, as a
self-employed business owner, he is not covered by Maryland's state unemployment program.  *See*
Md. Code Ann., Labor and Employment, § 8-201(a) ("covered employment" must be performed
"for wages" or "under a contract of hire").   PUA, on the other hand, was an unprecedented
pandemic program which provided federal unemployment benefits to individuals, like Plaintiff,
who were "self-employed . . . or otherwise would not qualify for regular unemployment or
extended benefits."   15 U.S.C. § 9021(a)(3)(A)(ii)(II).[5]

PUA benefits are "qualified disaster relief payments."   On March 13, 2020, the President
declared the COVID-19 pandemic a "disaster" for purposes of the Robert T. Stafford Disaster
Relief and Emergency Assistance Act, 42 U.S.C. § 5121 *et seq.* (the "Stafford Act"), which
authorizes assistance to "individual[s] unemployed as a result of a major disaster," 42 U.S.C.

---

[12] C.F.R. § 1005.2(b)(3)(i).  The other two definitions of "prepaid account" do not apply to a DUI debit card account, which is not a "payroll card account" established through an employer (§ 1005.2(b)(3)(i)(A)) or a "government benefit account" (§ 1005.2(b)(3)(i)(B)) "established *by a government agency*" (§ 1005.15(a)(2) (emphasis added)).  Although a DUI debit card is loaded with government funds, it is established by BANA, not by DUI.  Compl. ¶ 29.

[5] *See also* Maryland Dep't of Labor, *Frequently Asked Questions: Coronavirus Aid, Relief, and Economic      Security      Act      (CARES      Act)      UI      Benefit      Provisions,* https://dhcd.maryland.gov/Communities/Documents/COVID-
19/C.A.R.E.S.ActBenefitProvisionFAQs.pdf (last visited Aug. 2, 2021).

§ 5177.[6]  Shortly thereafter, the CARES Act was enacted, including the PUA provision which provides assistance to individuals who are unemployed as a result of the COVID-19 pandemic, and which is subject to the implementing regulations of the Stafford Act.  *See* 15 U.S.C. § 9021(a)(3) & (h).

Therefore, an account that is established by a bank and loaded only with PUA benefits is not a covered account under EFTA and Reg E.  The facts pled in the Complaint fit Plaintiff's prepaid account squarely within this exclusion, and outside the statute and regulation.  Plaintiff's boilerplate allegation that his "debit card account . . . is an 'account' as defined by . . . EFTA," Compl. ¶ 142, simply does not address the important aspects of the "account" definition and so is not sufficient to save his claim.  The Complaint makes no allegations containing the requisite "factual matter" necessary to justify an inference that Plaintiff has a covered account.  *Twombly*, 550 U.S. at 556.  "Labels and conclusions" are not enough to carry the pleading burden, *id.* at 555, particularly when other, more specific factual allegations point to a *different* conclusion.  Where, as here, "the plaintiff alleges extensive facts but leaves out one fact that is critical to his claim, . . . the court is apt to infer that the fact is adverse to the plaintiff."  *Jackson v. Marion Cnty.*, 66 F.3d 151, 154 (7th Cir. 1995).  Accordingly, Plaintiff's EFTA and Reg E claim (Count One) must be dismissed.

## II.    PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FAILS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM (COUNT FOUR)

In Count Four, Plaintiff alleges that BANA breached the Account Agreement by (1) failing to investigate Plaintiff's claim and provide him provisional credit or reimbursement for allegedly

---

[6] *See Letter from Pres. Donald J. Trump on Emergency Determination Under the Stafford Act* (Mar. 13, 2020), https://trumpwhitehouse.archives.gov/briefings-statements/letter-president-donald-j-trump-emergency-determination-stafford-act/.

7

unauthorized transactions on his account; (2) freezing Plaintiff's account for a longer period of time than necessary and for reasons other than those specified in the Account Agreement; and (3) failing to make funds available to Plaintiff when instructed to do so by DUI.  Compl. ¶ 182. Each of these theories fails, for the reasons set forth below.

Plaintiff's first contract theory, that BANA breached the Account Agreement by failing to investigate and credit his claim, is now moot because Plaintiff has been credited for the full amount of the allegedly-unauthorized transaction.  *See* Daniels Decl. ¶ 5[7]; *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot.") (internal quotation omitted).  The Account Agreement limits BANA's contractual liability to "the amount of [the] loss up to the face amount of any unauthorized card transaction covered by [its] policy," and BANA is "not liable for any claims of special, indirect or consequential damages."  *See* Compl. Ex. 2, Account Agreement, § 9. Thus, when BANA fully credited Plaintiff for the unauthorized transactions, Plaintiff received all "the relief [he] … sought to obtain through [his breach-of-contract] claim," thereby "mooting [the] claim."  *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002); *see also Knox v. Service Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (a claim is moot if it is no longer possible "for a court to grant any effectual relief whatever to the prevailing party") (internal quotation omitted); *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314 (1893) ("actual payment

---

[7] A district court "may consider … evidence beyond the scope of the pleadings" when adjudicating a Rule 12(b)(1) motion.  *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); *see also Diamond v. U.S. Bank, N.A.*, No. CV TDC-19-1458, 2020 WL 2319112, at *2 (D. Md. May 11, 2020) ("When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'") (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

and receipt of the money" resulting in complete relief moots a claim).  Thus, the breach-of-contract

claim should be dismissed for lack of standing under Rule 12(b)(1).  *See Amrhein v. Regency*

*Mgmt. Servs., LLC*, No. SKG-13-1114, 2014 WL 1155356, at *4 (D. Md. Mar. 20, 2014) ("Under

Rule 12(b)(1), if Plaintiffs' [claim] is moot, the Court lacks subject-matter jurisdiction and the

[claim] must be dismissed.").

   Plaintiff's backup theory that BANA breached the Account Agreement by freezing his

account runs headlong into the express language of the Account Agreement which permits BANA

to freeze accounts.  Section 2 of the Account Agreement states:

> If we suspect irregular, unauthorized, or unlawful activities may be
> involved with your Account, we may 'freeze' (or place a hold on) the
> balance pending an investigation of such suspected activities.

Compl. Ex. 2, Account Agreement, § 2.  Plaintiff alleges that his account was frozen "beyond the

length of time necessary for a reasonable investigation" and "for reasons other than those specified

in the Cardholder Agreement," Compl. ¶ 182, but offers no *facts* to support either conclusory

assertion.  *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362-63, 36 A.3d 399, 416-17

(2012) (dismissing breach of contract claim where "complaints failed to allege specific facts that

proved a breach of contract, instead offering only conclusory statements and general averments";

Maryland law requires that plaintiff "allege with certainty and definiteness *facts* showing a

contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by

defendant").  To the contrary, Plaintiff alleges he was informed on January 5, 2021 that his account

was frozen because BANA suspected "irregular, unauthorized, or unlawful activities," Compl. Ex.

3, which is precisely what the Account Agreement allows.  Later that month, he completed an

identification verification request in his DUI account.  Compl. ¶ 104.  And by February 3, 2021,

he was once again receiving benefits in his account, and was able to access those benefits.  *Id.*

¶¶ 105-07.  In other words, on the face of the Complaint, Plaintiff's account was unfrozen after an

investigation confirmed that he was not a fraudulent cardholder.  This is precisely what the Account Agreement contemplates and permits.  Therefore, Plaintiff has not adequately pled a breach of the Account Agreement based on the freezing of his account.

Plaintiff's final theory that BANA breached the Account Agreement by failing to "make funds available" as instructed by DUI, *id.* ¶ 182, similarly fails as he does not allege that there were any instructions that were issued but not followed.  Plaintiff's allegation, made entirely without support, cannot withstand a motion to dismiss.  *See Nemet Chevrolet,* 591 F.3d at 259. Accordingly, his breach of contract claim (Count Four) must be dismissed.

## III.   PLAINTIFF IS NOT A "THIRD-PARTY BENEFICIARY" UNDER THE DUI AGREEMENT, AND THEREFORE CANNOT SUE FOR ALLEGED BREACH OF THAT CONTRACT (COUNT FIVE)

In Count Five, Plaintiff brings an independent breach of contract claim, this time not based on the Account Agreement but instead based on the DUI Agreement between BANA and DUI— to which Plaintiff is not a party.  Plaintiff's allegation that, as a recipient of DUI benefits, he is an intended third-party beneficiary entitled to enforce the DUI Agreement (Compl. ¶ 186) is wrong, and so this claim fails as a matter of law.

"When determining third party beneficiary status, 'the controlling issue is whether the contract's terms, in light of the surrounding circumstances, reveal an intent to make the promise to the third party in fact if not in form.'"  *Yaffe v. Scarlet Place Residential Condominium, Inc.*, 205 Md. App. 429, 442, 45 A.3d 844, 851 (2012).  "It must clearly appear that the parties intend to recognize [the plaintiff] as the primary party in interest and as privy to the promise."  *Wm. T. Burnett Holding LLC v. Berg Bros. Co.*, 235 Md. App. 204, 213, 175 A.3d 876, 882 (2017). Further, "third party beneficiaries of a Government contract are generally assumed to be merely *incidental* beneficiaries and may not enforce the contract absent clear intent to the contrary."  *Id.* at 217 (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055,

1065 (D.C. 2008)).  Plaintiff's allegations fail to establish that he is a third-party beneficiary with the power to enforce the DUI Agreement.

With respect to Plaintiff's assertion that he "would benefit" from the performance of the DUI Agreement (Compl. ¶ 186), "[i]t is not enough that the contract may operate to [the plaintiff's] benefit." *Burnett*, 235 Md. App. at 213 (entity that participated in the negotiation of an agreement, but was not named a party thereto, was not a third-party beneficiary despite receiving benefits from the agreement).  The fact that Plaintiff received his unemployment benefits through a DUI Debit Card, rather than through another form of payment, does not confer third-party beneficiary status on him to complain about the contract by which the State procured BANA as its debit card provider.

Plaintiff's allegation that a "motivating purpose" of the contract was to provide him with his unemployment benefits (Compl. ¶ 186) is similarly insufficient, as it fails to establish that Plaintiff was the "primary party in interest."  The DUI Agreement did not create entitlement to unemployment benefits, which arise from state and federal relief programs. *Id.* ¶ 13.  The language that Plaintiff quotes from DUI's RFP—that one objective of the contract was to ensure that unemployment benefits recipients receive their benefits "efficiently, timely, accurately, and securely" (Compl. ¶ 15)—also does not establish that he, or any other DUI cardholder, was the "primary party in interest." *Id.* ¶ 15.  The rest of the objectives identified by DUI, which Plaintiff omits from his Complaint, confirm that the DUI Agreement was intended to help DUI fulfill its obligations to distribute benefits in an efficient, timely, accurate, and secure manner:  "[e]liminate the issuance of paper benefit payment checks"; "[r]educe costs"; "[c]reate efficiencies"; and "[m]aintain or increase the flexibility of accessing payments for recipients."  Compl. ¶ 14 (RFP, § 3.01).  In other words, the intent of the DUI Agreement was not to enrich benefits recipients (who

11

would receive benefits regardless of how DUI chose to distribute them)—it was to facilitate DUI's distribution of those benefits.[8]

Plaintiff asserts that permitting him to enforce the DUI Agreement would be consistent with the DUI Agreement's objectives and the reasonable expectations of the contracting parties. Compl. ¶ 186.  The DUI Agreement, however, is not just an ordinary contract between private parties.  It is a contract entered into by a state agency in the course of fulfilling its obligation to distribute unemployment benefits, under both state and federal programs.  *See id.* ¶ 13.  To recognize Plaintiff as a third-party beneficiary of the DUI Agreement would allow him to enforce contractual provisions in a manner that differs from, or even directly contradicts, DUI's own view of how to administer a public benefit program in the midst of an unprecedented statewide public health and economic emergency.  There is nothing in the DUI Agreement that even suggests a "clear intent" to confer that type of power on the hundreds of thousands of individuals to whom DUI distributes benefits.  *See Burnett*, 235 Md. App. at 217 (plaintiff was not a third-party beneficiary where "the purpose of the Agreement was to resolve the building and zoning violations alleged by [the city department]"; "a municipality may not contract away the exercise of its zoning powers").  The assertion that Plaintiff can enforce the state agency's contract is particularly bizarre where BANA and Plaintiff are parties to their own agreement, the Account Agreement, which confirms that neither BANA nor DUI intended, or expected, that Plaintiff have the power to enforce the DUI Agreement in addition to his own Account Agreement.

---

[8] *See also Goonewardene v. ADP, LLC*, 434 P.3d 124, 137 (Cal. 2019) (employee was not third-party beneficiary of employer's contract with payroll company that calculated and issued paychecks, even though employee benefited by receiving payments from those services, as "the relevant motivating purpose of the contract is simply to assist the employer in the performance of its required tasks, not to provide a benefit to its employees with regard to the amount of wages they receive").

Because Plaintiff has failed to adequately allege that he is a third-party beneficiary of an agreement between BANA and a state agency, his breach of contract claim (Count Five) must be dismissed.

## IV.   PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED (COUNT SIX)

Plaintiff's negligence claim (Count Six) fails because he has not adequately alleged the required elements of negligence.  *See Van Leer v. Deutsche Bank Securities, Inc.*, 479 Fed. App'x. 475 (4th Cir. 2012) (negligence claim under Maryland law requires "(1) a duty owed to the plaintiff; (2) a breach of that duty; (3) a causal relationship between breach and harm; and (4) damages").

First and foremost, the Complaint does not plausibly allege that BANA owed any tort duty of reasonable care to Plaintiff where the parties had a written banking contract.  *See Dainty v. Wells Fargo Bank, N.A.*, No. CV TDC-16-2755, 2017 WL 750478 (D. Md. Feb. 24, 2017), *aff'd*, 708 F. App'x 117 (4th Cir. 2018) ("Absent a duty of care there can be no liability in negligence."). "Dealings between a bank and its customer generally do not allow for claims sounding in negligence" because "the relationship between a bank and customer is contractual in nature, not giving rise to an independent duty."  *Van Leer*, 479 Fed. App'x. at 481 (affirming dismissal of negligence claim against bank); *see also Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 918 (D. Md. 2012) ("In Maryland, the relationship between a bank and a borrower is contractual, not fiduciary, in nature.").  Here, Plaintiff alleges that his relationship with BANA is governed by the Account Agreement (Compl. ¶ 35); that relationship is "strictly contractual" and does not give rise to any independent tort duties.  *See Van Leer*, 479 Fed. App'x. at 482; *see also Dainty*, 2017 WL 750478 (bank did not owe tort duty to customer); *Legore*, 898 F. Supp. 2d 912 (same); *Yousef v. Trustbank Sav., F.S.B.*, 81 Md. App. 527, 537, 568 A.2d 1134, 1139 (1990) (plaintiffs "cannot attach to the [bank] the assumption of any greater duty than that specified in [the contract]").

13

Plaintiff, however, asserts that he had another, separate agreement with BANA—an "implied-in-fact contractual relationship"—which gave rise to additional duties.  Compl. ¶¶ 192-96.  Even if the Court would accept that allegation, it cannot save Count Six because an implied contract cannot support a non-contractual claim sounding in negligence.

And the Court should not even entertain the implied contract theory.  The Complaint admits there already exists an express contract which covers BANA's servicing of DUI Debit Cards—the Account Agreement—which does not create any of the duties that Plaintiff now seeks to impose on BANA, such as (i) a "duty of ordinary care" to customers, (ii) a duty of "ordinary care for the protection of Plaintiff's financial records and personal information," (iii) a duty "not to allow unauthorized access by non-account holders," and (iv) a duty "not to allow unauthorized transfers from [Plaintiff's] personal account[]."  Compl. ¶¶ 193-96.  Maryland law is clear that quasi-contractual claims "cannot be asserted when an express contract defining the rights and remedies of the parties exists." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 101, 747 A.2d 600, 610 (2000) ("Respondent's attempt to recover under a theory of quasi-contract is nothing more than a unilateral attempt to amend the agreement in a manner that the law does not allow. . . . 'Parties entering into a contract assume certain risks with the expectation of a beneficial return; however, when such expectations are not realized, they may not turn to a quasi-contract theory for recovery.'"); *see also FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 644 (D. Md. 1998) (granting motion to dismiss as "Maryland law is clear that where there is an express contract between the parties, there can be no recovery in quasi or implied contract").

Also, "[u]nder Maryland law, implied contracts, like all contracts, require 'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 451 (D. Md.), *aff'd sub nom. Goss v. Bank of Am., NA*,

14

546 F. App'x 165 (4th Cir. 2013) (granting motion to dismiss as plaintiffs did not allege consideration or mutual assent, particularly where BANA's letter did not contain definite promise to modify their loan).  Plaintiff asserts that BANA owed several duties of care under an implied contract (Compl. ¶¶ 193-96), but alleges no facts showing BANA's assent to any of these obligations.  *See Mogavero v. Silverstein*, 142 Md. App. 259, 281, 790 A.2d 43, 56 (2002) (affirming summary judgment for defendant as there was no meeting of the minds).  Thus, Plaintiff has failed to allege any legal basis—whether in an "implied" contract or otherwise—for imposing tort duties on BANA.

Finally, even if BANA owed any tort duty of care to Plaintiff—and it does not—Plaintiff has not adequately alleged that any breach of those duties caused his alleged harm.  He asserts that BANA breached a duty of care by "allowing unauthorized access" to his account and failing to apply security measures to protect his information from misuse.  Compl. ¶¶ 197-99.  But Plaintiff's own allegations are that his debit card was used without his authorization because it was stolen from his mail:  he alleges that BANA mailed his DUI Debit Card to his home address but he did not receive it, and the unauthorized transactions began shortly thereafter.  Compl. ¶¶ 75, 85.  Thus, the unauthorized use of Plaintiff's card did not occur because BANA allowed unauthorized access to his information; it occurred because Plaintiff's card was intercepted in the mail by a criminal.  Similarly, to the extent that Plaintiff's negligence claim is premised on the theory that BANA should have included a chip on his card, that theory fails for the same reasons discussed above, as even a chip card could have been stolen from the mail and used by the thief; whether Plaintiff's card had a chip or not would have made no difference.  *Robinson v. Lioi*, No. CV CCB-12-192, 2017 WL 2937568, at *12 (D. Md. June 30, 2017), *aff'd sub nom. Graves v. Lioi*, 930 F.3d 307

(4th Cir. 2019) (gross negligence claim failed for lack of causation because attacker would have been free on day of attack even if defendants had ensured his earlier arrest).

## V.   PLAINTIFF HAS NOT STATED A DIRECT CLAIM UNDER THE MCPA (COUNT THREE)

In Count Three, Plaintiff asserts that BANA violated the Maryland Consumer Protection Act ("MCPA"), *see* Md. Code Ann., Com. Law § 14-3508, by (i) making representations about Plaintiff's DUI Debit Card and BANA's error resolution processes, Compl. ¶¶ 171-172; (ii) failing to adhere to the terms of the Account Agreement and the DUI Agreement, *id.* ¶¶ 173-174; and (iii) engaging in unfair or deceptive practices by failing to reasonably protect Plaintiff's personal information, *id.* ¶¶ 175-176.  None of these allegations support a claim that BANA violated the MCPA.  Count Three should be dismissed.

### A.   Plaintiff Has Not Pled His Misrepresentation Claims with Particularity.

Section 13-301(2) of the MCPA defines certain representations as unfair or deceptive trade practices.  Plaintiff asserts that BANA violated subsections (i) and (iv) of this provision in two ways:  first, by representing that Plaintiff's DUI Debit Card was "private and secure, when it was not," and second, by "failing to adhere to the standards set forth in the EFTA and the MPIPA" when Plaintiff notified BANA of account errors.[9]  Compl. ¶¶ 171-172.  Plaintiff has failed to adequately plead an MCPA violation based on these alleged representations.

"Claims of fraudulent representations under the MCPA must be pleaded with particularity" under Fed. R. Civ. P. 9(b).  *Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL

---

[9] Subsection (i) refers to a representation that "[c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have."  Md. Code Ann., Com. Law § 13-301(2)(i).  Subsection (iv) refers to a representation by a merchant that "[c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not."  *Id.* § 13-301(2)(iv).

657428, at *12 (D. Md. Feb. 16, 2017); *see also Brault v. Trans Union, LLC*, No. GJH-18-3244, 2019 WL 2162284, at *3 (D. Md. May 17, 2019), *reconsideration granted in part*, No. GJH-18-3244, 2019 WL 7293396 (D. Md. Dec. 27, 2019); *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724, n.10 (D. Md. 2009).  In order to satisfy Rule 9(b), a plaintiff bringing an MCPA claim must allege the following elements with particularity:  (i) the defendant "made a false statement of fact;" (ii) the defendant "knew the statement was false or acted with reckless disregard for the truth of the statement;" (iii) the defendant "made the statement for the purpose of defrauding the plaintiff;" (iv) the plaintiff "reasonably relied on the false statement;" and (v) the plaintiff was damaged as a result.  *Brault*, 2019 WL 2162284, at *4 (citing *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013)).  Plaintiff's allegations do not satisfy these requirements.

First, Plaintiff does not allege that BANA made a false statement of fact.  Plaintiff recites provisions of the Account Agreement and DUI Agreement (*see, e.g.*, Compl. ¶¶ 21, 27, 36-38) but he does not identify which, if any, of these are the representations that form the basis of his MCPA claim.  In fact, his theory that BANA "fail[ed] to adhere to the standards set forth in the EFTA and the MPIPA," Compl. ¶ 172, does not allege a statement at all, and therefore fails for that reason alone.  *See Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 458 (D. Md. 2014), *as corrected* (Mar. 20, 2014) (dismissing MCPA claim for failure to allege a false or misleading representation because "labelling of the $12 fee—whether as a service charge, processing fee, convenience fee, or delivery fee—does not constitute any sort of representation about how Ticketmaster would use the $12").  This theory also fails for the same reasons that his EFTA and MPIPA claim fail.  *See supra* Sections I, VI.  As for Plaintiff's theory that BANA allegedly represented that the DUI Debit Card was "private and secure, when it was not," Plaintiff has similarly failed to identify the

representation at issue, or its falsity; the theft of Plaintiff's card from his mail does not establish that the card was not "private and secure."

Second, Plaintiff has not alleged that BANA knowingly or recklessly made false statements of fact "for the purpose of defrauding" him. *Brault*, 2019 WL 2162284, at *4. Indeed, statements in the DUI Agreement were not even directed at Plaintiff, as he was not a party to that agreement. Plaintiff's failure to even allege the basic requirements of the statute requires dismissal of his MCPA claim. *See id.* (dismissing MCPA claim where plaintiff failed to allege that either defendant made the allegedly misleading statement "for the purpose of defrauding" plaintiff).

Third, Plaintiff does not adequately allege that he relied upon any representation by BANA. "'To establish reliance under the MCPA, [a plaintiff] must plead and prove that the false or misleading statement substantially induced [his] choice.'" *Gibson v. Nationstar Mortg., LLC*, No. GJH-14-03913, 2015 WL 302889, at *4 (D. Md. Jan. 21, 2015) (quoting *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 798 (D. Md. 2013)). But Plaintiff does not allege that he reviewed the DUI Agreement or the Account Agreement at all, never mind that he relied on them such that they "induced" him to make a choice; he does not allege, for example, that he chose to receive his benefits via a DUI Debit Card in reliance on any representation from BANA. *See Agomuoh*, 2017 WL 657428, at *12 (dismissing MCPA claim where plaintiffs asserted only that statement was false and misleading but "have not alleged how they relied to their detriment upon this representation"); *Solomon v. Cap. One Bank USA*, No. GJH-14-03638, 2014 WL 7336694, at *4 (D. Md. Dec. 19, 2014) (dismissing MCPA claim where "Plaintiff has not pleaded sufficient facts from which one can plausibly infer the existence of any statements or representations made by Defendant that induced him to take any action or that they 'substantially' induced any choice he made").

18

Plaintiff's assertion that he "relied on Defendant to protect [his] accounts and private financial information" (Compl. ¶ 177) is insufficient, as Plaintiff does not connect this alleged reliance to any particular representation, or to any "choice" that he made. *See Turner v. JPMorgan Chase, N.A.*, No. CIV.A. TDC-14-0576, 2015 WL 5021390, at *5 (D. Md. Aug. 21, 2015) (dismissing MCPA claim because plaintiff alleged that defendant's encouragement gave her "a false state of comfort" but did not allege "how she relied on the alleged misrepresentations to her detriment, either by taking actions that she otherwise would not have taken, or by refraining from taking actions that she otherwise would have taken"); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 255–56 (D. Md. 2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) ("[T]he absence of any clear reliance by Plaintiffs on Defendant's misrepresentations makes the causal connection between any misconduct and these symptoms too tenuous.").  And to the extent that Plaintiff's MCPA claim is based upon statements by BANA's customer service representatives (*see, e.g.*, Compl. ¶ 115), he does not connect any of these statements to his MCPA claim, nor has he alleged either reliance or causation when these statements were made *after* he had already suffered his alleged losses, and therefore he could not have relied on them to his detriment.  *See Willis v. Countrywide Home Loans Servicing, L.P.*, No. CIVA CCB-09-1455, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009) (dismissing MCPA claim where plaintiff did not allege that misinformation about loan modification programs caused him to suffer any harm "apart from the debt that he already owed").

Fourth, Plaintiff's allegations regarding the nature of his alleged loss—which resulted from the interception of his mail, and not because he relied on any representation by BANA, *see supra*— also prevent him from adequately pleading causation. *See Kaswell v. Wells Fargo Bank, N.A.*, No. CIV.A. RDB-13-2315, 2014 WL 3889183, at *6 (D. Md. Aug. 6, 2014) (dismissing MCPA claim

for failure to allege reliance where plaintiff's status was not impacted by reliance on alleged misrepresentations); *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. L-09-2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010) (dismissing MCPA claim where plaintiff did not allege that defendant's actions caused him an actual loss or injury); Md. Code Ann., Com. Law § 13-408(a) (allowing for "an action to recover for injury or loss sustained . . . *as the result of* a practice prohibited by this title.") (emphasis added).  As a result, he has failed to state an MCPA claim based on allegedly false or misleading representations.

### B.      Plaintiff Cannot State an MCPA Claim Based on Alleged Breaches of Contract.

Plaintiff alleges that Defendant violated the MCPA by "failing to adhere to the terms" of the Account Agreement and DUI Agreement.  Compl. ¶¶ 173, 174.  But as explained above, both of Plaintiff's breach of contract claims fail.  *See supra* Sections II, III.  Even if Plaintiff had sufficiently alleged a breach of contract, "a breach of contract does not compel a finding of a breach of the MCPA."  *Javitt v. Cunningham Contracting, Inc.*, 2016 WL 4493367, at *6 (Md. Ct. Spec. App. Aug. 26, 2016) (affirming judgment for defendant on MCPA claim even though lower court found breach of contract).  Therefore, Plaintiff cannot maintain an MCPA claim based on alleged contractual violations.

### C.      Plaintiff Cannot Maintain an MCPA Claim Based On MPIPA Where He Has Not Alleged an MPIPA Violation.

Finally, Plaintiff alleges that BANA violated the MCPA by violating the MPIPA.  Compl. ¶¶ 175, 176.  As discussed in Section VI, *infra*, Plaintiff has failed to state a claim for violation of the MPIPA.  Therefore, he has failed to state a claim for violation of the MCPA as well.  *See Neto v. Rushmore Loan Mgmt. Servs., Inc.*, No. CV DKC 16-1056, 2017 WL 896890, at *7 (D. Md. Mar. 7, 2017) ("Because he has not properly pleaded an MCDCA violation, his MCPA claim premised on an MCDCA violation will also be dismissed.").

20

## VI.   PLAINTIFF HAS NOT STATED A CLAIM UNDER THE MARYLAND PERSONAL INFORMATION PROTECTION ACT (COUNT TWO)

Section 14-3503(a) of the Maryland Personal Information Protection Act ("MPIPA") requires that businesses that own or license personal information "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal information owned or licensed and the nature and size of the business and its operations."  Md. Code Ann., Com. Law § 14-3503(a).  In Count Two, Plaintiff alleges that BANA violated Section 14-3503 by (i) "us[ing] magnetic stripe technology" and (ii) "collect[ing], stor[ing], and transmitt[ing] information in an unsafe manner."  Compl. ¶ 161.  Plaintiff has not adequately alleged that BANA violated the MPIPA, as he has not alleged facts sufficient to establish that BANA failed to implement or maintain reasonable security measures, nor has he alleged sufficient facts to show that he suffered injury or loss as a result of BANA's alleged failure to comply with the statute.  Accordingly, Count Two of his Complaint must be dismissed.

### A.   Plaintiff Has Not Alleged That BANA's Use of Magnetic Stripe Technology Is an Unreasonable Security Procedure or Practice.

Plaintiff's first theory, that the MPIPA effectively prohibits the use of magnetic stripe technology because it is per se unreasonable, is an entirely novel one that is unsupported by any case law, contract, or statute.  He identifies no basis for concluding that every card issuer has a duty only to issue prepaid debit cards with "chip" technology.  In fact, there is no such requirement. The DUI Agreement—which incorporates the State's own RFP and its chosen specifications and requirements for the program—does not contain any requirement that BANA issue chip cards for the DUI program.  *See* Compl. ¶ 14 (citing RFP).  The Account Agreement similarly contains no chip requirement.  *See* Compl. Ex. 2, Account Agreement.  On the face of the Complaint, Plaintiff has failed to allege that the use of magnetic stripe technology is a violation of MPIPA and this claim should be dismissed.

**B.    Plaintiff Has Not Alleged That BANA Collected, Stored, or Transmitted Plaintiff's Personal Information in an Unsafe Manner.**

Plaintiff also fails to allege any facts to support his assertion that BANA violated MPIPA because it "collected, stored, and transmitted [his] information in an unsafe manner."  Compl. ¶ 161.  Instead, the Complaint is clear that his card was compromised because his mail was stolen out of his mailbox, and not because of anything that BANA did.  Compl. ¶¶ 75, 76, 85; *see supra* Section IV.  The MPIPA claim must be dismissed as flatly inconsistent with the facts alleged.

Even if the mailbox theft somehow might not doom a claim like this, Plaintiff has not alleged any facts that implicate BANA's collection, storage, and transmission of his information. The Complaint offers only his conclusory assertion that, "[u]pon information and belief," BANA "collected, stored, and/or transmitted" Plaintiff's personal information in "nonencrypted and nonredacted form or in some other way that permitted unauthorized third parties to access that information in violation of the MPIPA."  Compl. ¶ 160.  But conclusory allegations "based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'"  *Mann Bracken, LLP v. Exec. Risk Indem., Inc.*, No. DKC 15-1406, 2015 WL 5721632, at *7 (D. Md. Sept. 28, 2015) (quoting *Harman v. Unisys Corp.*, 356 F. App'x 638, 640-41 (4th Cir. 2009)); *Flowers v. Baltax 2017, LLC*, Civil No. JKB-19-0618, 2019 WL 3501584, at *9 (D. Md. Aug. 1, 2019) ("[W]holly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.") (citing *Doe v. Virginia Dept. of State Police*, 713 F. 3d 745, 754 (4th Cir. 2013)).

Plaintiff alleges no facts to support these conclusions stated as allegations.  For instance, Plaintiff asserts that "unauthorized third parties . . . breach[ed] the security system to access Plaintiff and Class Members' personal data and account information," Compl. ¶ 163, but offers no details to show that such a breach ever occurred.  *See Verbal*, 204 F. Supp. 3d at 844 ("conclusory factual allegations devoid of any reference to actual events" are insufficient to state a claim).

22

Plaintiff also references a Facebook post by an unnamed "Maryland DUI recipient" speculating about a "security breach," Compl. ¶ 59(a), but speculation—especially by some unnamed person posting on social media—is not sufficient to withstand a motion to dismiss. *MIM Constr., Inc. v. Frederick Cty.*, No. DKC 19-1106, 2020 WL 998739, at *4 (D. Md. Mar. 2, 2020) (granting motion to dismiss where plaintiff's allegation that defendant's reason was pretextual was "nothing more than speculation"). Likewise, Plaintiff offers no facts to support his vague assertion that BANA transferred information regarding Plaintiff's debit card to "unsecured or inadequately secured data storage devices" and stored his information on such devices. Compl. ¶ 162. If this assertion refers to the storage of information on magnetic stripe cards, it fails for the same reasons discussed above. *See supra* Section VI.A. If Plaintiff is referring to other, unidentified, "data storage devices," these unsupported and conclusory allegations are insufficient to withstand a motion to dismiss. *See Flowers*, 2019 WL 3501584, at *9 ("conclusory language is insufficient to meet the plausibility standard at the motion to dismiss stage" and dismissing claim where plaintiff's assertion lacked supporting facts) (citing *Doe*, 713 F. 3d at 754).[10]

For each of these reasons, Plaintiff's MPIPA claim must therefore be dismissed.

### C.   Plaintiff Has Not Alleged That He Suffered Any Injury as a Result of BANA's Conduct.

Plaintiff's MPIPA claim also fails because he has not adequately alleged that he suffered any injury or loss as a result of the alleged violation. MPIPA violations are enforced under the MCPA, *see* Md. Code Ann., Com. Law § 14-3508, which requires that a plaintiff demonstrate that his alleged injury or loss was "the result of a practice prohibited by this title." Md. Code Ann., Com. Law § 13-408(a); *see also supra* Section V.A. Here, Plaintiff's allegations fail to plausibly

---

[10] To the extent any of these vague assertions relate to "Class Members," they are irrelevant to whether Plaintiff has adequately alleged a claim on his own behalf.

suggest that his purported losses in having funds drained from his prepaid debit card were "as a result of" BANA's alleged violations in the storage or transmittal of his information, or the use of magnetic stripe technology.

To meet the causation element of the MCPA, Plaintiff offers only the ipse dixit that the unauthorized transactions which drained his card "could only have occurred if [BANA] failed to store or transfer Cardholder Information in a reasonably secure manner." Compl. ¶ 47. But Plaintiff alleges no facts to support this allegation, and the only fact that is pertinent—that his card was stolen from the mail—belies it. Unfounded speculation is entirely insufficient to withstand a motion to dismiss.

In *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, for example, the Fourth Circuit affirmed the dismissal of a complaint where the sole basis of plaintiff's assertion that the defendant had authored allegedly fabricated posts was plaintiff's inability to identify the author of those posts (which led plaintiff to assume that they must have been authored by the defendant), because the plaintiff failed to plead facts actually showing that defendant created the posts at issue. 591 F.3d 250, 259 (4th Cir. 2009). The same deficiency exists here: Plaintiff simply assumes that his harm was caused by BANA's storage or transfer of his information because he *says* he cannot identify any other explanation. Such speculation is insufficient to meet Plaintiff's pleading burden. *See also MIM Constr.*, 2020 WL 998739, at *4 (dismissing claim where plaintiff "does not plead any facts").

Plaintiff's claim that the unauthorized transactions "could only have occurred" as a result of BANA's storage of Plaintiff's information is not even plausible. His own allegations demonstrate that his losses occurred because his card was intercepted in the mail and the criminal accessed the funds on the card. *See supra* Section IV. He does not suggest why that is BANA's

24

fault or that issuing a card with an EMV chip would have helped him.  Although Plaintiff cites to a news article that attributes increased fraud during the COVID-19 pandemic to "cloned" cards resulting from the use of "skimmers" (card readers that copy data from cards used at payment terminals), *id.* ¶ 55, Plaintiff does not and cannot allege that his card was "skimmed."  That is because his card was physically stolen from his mail, not skimmed at a payment terminal.  *Id.* ¶¶ 75, 76, 85.  In short, Plaintiff offers no facts to connect BANA's alleged storage of his personal information to the theft of his mail.[11]

Because Plaintiff has failed to allege that he suffered any "injury or loss" as a result of the alleged MPIPA violations, his claim must be dismissed.  *See Thompson*, 2010 WL 1741398, at *3; *Willis*, 2009 WL 5206475, at *6 (dismissing MCPA claim where plaintiff "never describes . . . how his damages were caused by Countrywide's allegedly deceptive trade practices.").

Plaintiff also lacks standing to assert his MPIPA claim because his alleged injury cannot be traced to BANA's conduct.  It is black-letter law that "[a] plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct."  *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (internal quotation omitted); *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547 (2016) (requiring a plaintiff to show that his injury "is fairly traceable to the challenged conduct of the defendant").  Here, however, there is no "causal connection between" Plaintiff's alleged injury "and the conduct complained of"—namely, BANA's data security practices or its use of magnetic stripe technology.  *Lujan*, 504 U.S. at 560.  Plaintiff's alleged injury resulted not from anything that BANA did or did not do, but instead from "the independent action of some third party not before the court" (*i.e.*, the person who stole his

---

[11] Plaintiff does not appear to allege that the MPIPA prohibits the mailing of debit cards, nor is there any support for such a theory.

card from the mail).  *Id.* at 560.  Because Plaintiff "bear[s] the burden of pleading … concrete facts showing that *the defendant's* actual action has caused" his harm, his MPIPA claim (Count Two) must also be dismissed under Rule 12(b)(1).  *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013) (emphasis added).

<u>**CONCLUSION**</u>

For all the foregoing reasons, BANA respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Dated:  August 2, 2021                              Respectfully submitted,

                                                    /s/ Thomas M. Hefferon
                                                    Thomas M. Hefferon (Bar No. 15109)
                                                    *THefferon@goodwinlaw.com*
                                                    **GOODWIN PROCTER LLP**
                                                    1900 N Street, N.W.
                                                    Washington, DC 20036
                                                    Tel.: (202) 346-4029
                                                    Fax: (202) 346-4444

                                                    James W. McGarry (*pro hac vice*)
                                                    *JMcGarry@goodwinlaw.com*
                                                    Yvonne W. Chan (*pro hac vice*)
                                                    *YChan@goodwinlaw.com*
                                                    **GOODWIN PROCTER LLP**
                                                    100 Northern Avenue
                                                    Boston, MA 02210
                                                    Tel.: (617) 570-1000
                                                    Fax: (617) 523-1231

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

/s/ Thomas M. Hefferon
Thomas M. Hefferon (Bar No. 15109)

28